UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

APRIL W.[1],                              )
                                          )
          Plaintiff,                      )
                                          )
     v.                                   )     CIVIL NO. 1:21cv197
                                          )
KILOLO  KIJAKAZI, Acting                  )
Commissioner of Social Security,          )
                                          )
          Defendant.                      )

<u>OPINION AND ORDER</u>

This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's applications for Disability

Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423(d), and for

Supplemental Security Income (SSI) under Title XVI of the Act, § 1383(c)(3). Section 205(g) of

the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified

copy of the transcript of the record including the evidence upon which the findings and decision

complained of are based.  The court shall have the power to enter, upon the pleadings and

transcript of the record, a judgment affirming, modifying, or reversing the decision of the

[Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he

findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be

conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

mental impairment which can be expected to last for a continuous period of no less than 12

months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment

is "an impairment that results from anatomical, physiological, or psychological abnormalities

which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It

must be shown that the impairment is severe enough to preclude the plaintiff from engaging in

substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372

U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that

the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds*

*v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record

as a whole contains substantial evidence to support the [Commissioner's] findings."  *Garfield v.*

*Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786

(7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere

scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting

*Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*,

552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed,

42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also*

*Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the

following findings:

2

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2.      The claimant has not engaged in substantial gainful activity since January 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.      The claimant has the following severe impairments: fibromyalgia, chronic fatigue syndrome, migraines, obesity, and major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can never climb ladders, ropes, scaffolds. She can occasionally climb ramps and stairs and she can occasionally balance, stoop, kneel, crouch and crawl. The claimant should avoid all exposure to unprotected heights, wet, slippery or uneven surfaces, vibration, extreme heat, extreme cold and unguarded moving machinery. In addition, the claimant can understand, remember and carry out simple instructions and tasks, and she can make judgments on simple work related decisions. She can respond appropriately to occasional and superficial interactions with coworkers and supervisors, and she should avoid work activity requiring interactions with the general public. The claimant can respond appropriately to usual work situations, and she can deal with routine changes in a routine work setting free from fast-paced production requirements, such as that required in assembly line type work activity.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on May 15, 1970 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.      The claimant has a limited education (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding

3

that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-24).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on November 12, 2021.  On December 21, 2021 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on December 22, 2021. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"? (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not

4

disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).   In the present case, Step 5 was the determinative inquiry.

In January 2013, Plaintiff saw Lisa A. Lane, M.D., her long-time primary care physician (PCP), to request medication for her fibromyalgia and follow-up on her depression. (Tr. 356-58.) She was suffering from nightmares every night and, unfortunately, Cymbalta which she had tried previously, had caused a psychotic break. (Tr. 357.) She was diagnosed with acute depression and anxiety and prescribed Celexa. (*Id.*) The following month, Plaintiff returned and reported doing better. Dr. Lane's diagnoses of depression and anxiety remained unchanged, and she added an insomnia diagnosis. (Tr. 354.)

In April 2014, Plaintiff sought treatment at the Bowen Center for worsening depression and anxiety. (Tr. 331.) She had been diagnosed with post-traumatic stress disorder and was having intrusive thoughts. (Tr. 479.) The April 15 exam showed that Plaintiff had a sad and depressed affect, was very emotional in the session, and had a moderate distress level. (*Id.*) She returned on the 22nd and was moderately improved. (Tr. 451.) She appeared relaxed when she was seen on the 29th. (Tr. 453.) By May 7th, she had markedly improved. (Tr. 455-56.) She appeared for three follow-up visits in May (twice with her service dog) and her improvement varied among slight, moderate, and marked. (Tr. 457-62.) She continued sessions in June 2014. (Tr. 463-66.)

When Plaintiff returned to Dr. Lane in October 2014, she reported that Celexa was not

working, and that she was having a lot of anxiety and depression. (Tr. 429.) On this visit, Plaintiff

had a BMI of 36.54. (Tr. 433.) Dr. Lane adjusted Plaintiff's medications. (Tr. 431.)

In April 2015, Plaintiff returned to Dr. Lane reporting increased anxiety and depression,

exacerbated by her worsening fibromyalgia. (Tr. 424.) Exam noted left foot pain. (Tr. 424.)

Plaintiff was diagnosed with depression with anxiety, fibromyalgia, acute back pain, and plantar

fasciitis of the left foot. (Tr. 425.) The medications were adjusted. (Tr. 425.)

In May 2015, Plaintiff presented to Parkview and saw Ronda Farnham, N.P., for concerns

about her hearing in both ears. (Tr. 419.) Audiometer testing demonstrated hearing loss at

different frequencies in both ears. (Tr. 420.) She was diagnosed with bilateral hearing loss. (Tr.

421.)

On October 20, 2015, Plaintiff returned to Dr. Lane. Plaintiff reported taking four

Tramadols a day for pain, without obtaining relief. (Tr. 414.) She was also experiencing

depression, fatigue, and back and knee pain. (*Id*.) Exam showed tenderness in the spine and

decreased sensation consistent with peripheral neuropathy in the lower extremities, bilaterally.

(Tr. 415.) She was tender to movement of the right knee. (*Id*.) Dr. Lane diagnosed upper back

pain, right knee pain, fibromyalgia, and depression with anxiety; the medications were adjusted.

(Tr. 416.)

Plaintiff returned to the Bowen Center in December 2015 due to her high stress level. (Tr.

498.) On exam, she was disoriented as to her person. (*Id*.) Her mood was depressed and sad; she

had scattered, racing thoughts and poor concentration. (*Id*.) She met the diagnostic criteria for

major depressive disorder, recurrent, evidenced by her tearfulness, insomnia, racing thoughts,

poor concentration, lack of pleasure, low energy, and easy irritability. (Tr. 447.) Her prognosis

was guarded. (Tr 499.)

On February 18, 2016, Plaintiff returned to Dr. Lane. She reported she was irritable and

tearful, and that while she found Effexor helpful, she did not have medical insurance and needed

comparable but more affordable medications. (Tr. 411.) Dr. Lane noted that Plaintiff was obese.

(*Id*.) After an exam, Dr. Lane adjusted Plaintiff's medications. (Tr. 412.) Plaintiff was seen in

August 2016 and her medications were reviewed. (Tr. 405-07.) On December 8, 2016, Plaintiff

returned to discuss management of her pain. (Tr. 399.) She was very tearful describing her severe

stress, being overwhelmed, tired, and without energy; she was also suffering from significant

incontinence and leakage. (*Id*.) On exam, Plaintiff appeared pale and disheveled (*Id*.) She had

diffused tenderness of all muscles in major joints. (*Id*.) Dr. Lane diagnosed fibromyalgia, upper

back pain, depression with anxiety, and chronic fatigue, among others. (Tr. 401.) Her medications

were adjusted. (*Id*.)

In the Spring of 2017, Plaintiff returned to the Bowen Center for her stress and depression.

(Tr. 445, 501.) On exam, her memory was fair; she had racing thoughts and vegetative symptoms,

including decreased appetite, poor concentration, and decreased sleeping. (Tr. 501.) She met the

diagnostic criteria for major depressive disorder, recurrent, with anxious distress as evidenced by

her depressed mood, poor concentration, low motivation and energy, recent suicidal thoughts,

racing thoughts, sleep disturbance (only sleeping for a few hours at a time), and irritability. (Tr.

445.) At a follow-up a session, it was noted that Plaintiff had regressed. (Tr. 467-68.)

In April 2017, Plaintiff saw Dr. Lane. She was taking two-to-three Tramadols a day for

worsening fibromyalgia pain and Lorazepam for intermittent panic attacks. (Tr. 396.) On exam,

she had diffused tenderness of all muscles in major joints. (*Id*.) Dr. Lane diagnosed fibromyalgia/

upper back pain/multiple joint pain, and depression with anxiety, among others and Plaintiff's medications were adjusted. (Tr. 397.) Plaintiff returned to Dr. Lane in July 2017. She was taking three to four Tramadols a day. (Tr. 393.) On exam, she had edema and diffuse lower extremity pain with palpation, especially in the foot and ankle area. (*Id*.) Diagnoses included bilateral foot pain, depression with anxiety, and fibromyalgia/upper back pain, and her medications were adjusted. (Tr. 394.) In October 2017, Plaintiff was taking four Tramadols a day for her pain. (Tr. 390.) Exam showed tenderness in the spine and extremities. (*Id*.) Her medications were adjusted. (*Id*.) Plaintiff complained of worsening pain in December 2017. She had tenderness over the left SI joint radiating into the gluteal region, and pain with elevation and abduction of the left leg. (Tr. 387.) She was diagnosed with sacroiliac joint and left leg pain, and received a steroid injection. (Tr. 388.)

In February 2018, Plaintiff was taking four Tramadols a day, however, her insurance recently had denied coverage of her pain medication. (Tr. 384.) Exam noted diffused pain throughout. (*Id*.) Her medications were adjusted, and she was referred to the pain clinic. (Tr. 385.) Plaintiff returned in May 2018. She had been unable to go to pain management. (Tr. 378.) Exam showed diffused muscular and joint tenderness, worse in the knees and hips bilaterally. (Tr. 379.) Many of her previous diagnoses were affirmed; she was also diagnosed with chronic migraine. (Tr. 379-80.) Later in July, Plaintiff returned to Dr. Lane following an emergency room (ER) visit after experiencing swelling in all her extremities. (Tr. 375.) Exam noted pitting lower extremity edema, swelling of the hands bilaterally, and positive bilateral leg and calf tenderness. (Tr. 376.) Dr. Lane diagnosed bilateral lower extremity edema/fluid retention and prescribed medication. (*Id*.)

In May 2019, Plaintiff returned to the Bowen Center; her mother had passed away, which aggravated her depression and anxiety. (Tr. 550.) She met the diagnostic criteria for major depressive disorder, with anxious distress, evidenced by thoughts of suicide, continual feelings of sadness, trouble sleeping and concentrating, feelings of guilt, fatigue, and irritability. (Tr. 443.)

In November 2019, Plaintiff was seen at the ER for stroke-like symptoms. (Tr. 602.) She subsequently returned to Dr. Lane's office, where she saw Ronda Lehn, N.P. (*Id*.) Plaintiff was concerned her symptoms were directly associated with her stress level. (*Id*.) She was very tearful during her visit, and stated that she was experiencing mood swings and poor sleep. (*Id*.) Review of symptoms noted that she was positive for weakness, agitation, decreased concentration, dysphoric mood, sleep disturbance, fatigue, nervousness, and anxiety. (Tr. 603-04.) On exam, her mood was depressed and anxious, and her affect was labile. (Tr. 604.) Ms. Lehn discussed the possibility of pseudo symptoms associated with her excessive amount of stress, depression, and anxiety. (Tr. 605.) During a follow-up next month, Plaintiff was extremely tearful when explaining that her medication was not working. (Tr. 594-97.) She described herself as extremely irritable, moody, angry, with impulses to throw things; she struggles with joint pain and fibromyalgia. (*Id*.) Her medications were adjusted. (*Id*.)

In December 2019, Plaintiff went to the Bowen Center. She met the criteria of persistent depressive disorder with anxious distress, evidenced by insomnia, low energy and self-esteem, poor concentration, feelings of hopelessness, irritability, muscle tension, restlessness, and sleep disturbances. (Tr. 548.)

Plaintiff continued to suffer from multiple medical issues well into 2020, including, pain, anxiety, depression, fibromyalgia, malaise, and fatigue. (Tr. 580 (August), 583 (May), 588

(January).). Relevant exams noted left medial and lateral knee joint line tenderness with a slight amount of fluid under the patella and low back tenderness in the midline area as well as bilateral SI joints (Tr. 581), diffused joint and muscular tenderness (Tr. 583, 588), through the neck, shoulders, back, and legs as well as the upper arms, along with bilateral upper extremity weakness noted with grip strength (Tr. 583).

In May 2020, Dr. Lane completed a Fibromyalgia Medical Source Statement, noting that she had treated Plaintiff for years, seeing her every four to six months. (Tr. 542-46.) Dr. Lane identified Plaintiff's diagnoses, symptoms, signs, associated conditions, and tender points. (*Id*.) Dr. Lane opined that Plaintiff's conditions were chronic. (Tr. 544.) Plaintiff would need to shift positions at will and would require periods of walking around during an eight-hour shift (every hour for 15 minutes each). (Tr. 545.) She would need two to three breaks a day for 15-20 minutes due to her muscle weakness and chronic fatigue, would be off task 25 percent or more, was incapable of even low stress work, and would be absent more than four days a month. (Tr. 545-46.)

Plaintiff underwent four consultative examinations at the request of the State Agency. On June 13, 2016, Plaintiff underwent a physical exam performed by Carolyn Greer, M.D. (Tr 336-43.) Plaintiff walked with a single point cane. (Tr. 339.) She was able to get on and off the table, albeit slowly. (*Id*.) She was unable to walk on heels, toes, tandem walk, or squat. (*Id*.) She had stiffness with range of motion testing, and had a limited range of motion in the cervical and lumbar spine, both knees, hips, and ankles. (Tr. 339, 341.) Dr. Greer diagnosed Plaintiff with fibromyalgia and opined that Plaintiff might benefit from non-opioid interventions, as well as cognitive based therapy that could coordinate with her mental health care. (Tr. 342). She

diagnosed other conditions, including arthritis, severe depression, and anxiety. (*Id*.)

Plaintiff underwent a psychiatric exam performed by Dan L. Boen, Ph.D., HSPP, on June 14, 2016. (Tr. 344-47.) She reported taking many medications, but remained sad, fearful, depressed, experienced trouble concentrating and panic attacks, and was nervous in social situations. (Tr. 344.) She felt agitated and irritable, heard her father calling her name even though he was not there, and bathed only every other day. (Tr. 345.) On exam, Plaintiff answered two out of five of the serial seven subtractions and responded to only one of the two math calculations. (Tr. 346.) Her short-term memory was mildly below normal and her concentration was moderately below normal. (*Id*.) Dr. Boen diagnosed (1) post-traumatic stress disorder, (2) attention-deficit/ hyperactivity disorder, combined presentation, (3) major depressive disorder, recurrent episode, moderate, and (4) generalized anxiety disorder. (Tr. 346-47.) Dr. Boen opined that Plaintiff can remember and understand what she would be asked to do on a job. (Tr. 347.) However, she would have trouble concentrating and staying on task. (*Id*.) She would have no difficulty getting along with coworkers or her boss. (*Id*.)

On September 9, 2019, Plaintiff underwent a physical exam performed by Abdali Shakoor Jan, M.D. (Tr. 502-08.) On exam, Plaintiff reported pain with movement of her legs and arms and had a limited range of motion in the shoulder and left hip. (Tr. 506, 508.) Diagnoses were fibromyalgia, multiple joint pain, severe depression, and generalized anxiety disorder. (Tr. 506.)

Dr. Boen performed a second psychiatric examination on September 9, 2019. (Tr. 509-13.) Despite her medications, Plaintiff reported she was sad, depressed, and had trouble concentrating and focusing. (*Id*.) She was nervous in social situations and suffered from anxiety and panic. (*Id*.) She had nightmares and avoided painful places and people; she reported suicidal

and paranoid ideation, and mild auditory and visual hallucinations. (Tr. 509-10.) She felt

unusually agitated, irritable, frustrated, and manic. (*Id*.) She bathed every other day. (Tr. 509.) On

exam, Plaintiff could not remember three simple words after a delay. (Tr. 512.) Dr. Boen found

that Plaintiff would not have trouble understanding what to do on a job, but would have trouble

remembering what to do, concentrating, staying on task, and getting along with coworkers and

with a boss. (Tr. 513.)

     In September 2019, Dr. Brill, M.D., a State Agency medical consultant, concluded that

there was insufficient evidence to assess Plaintiff's condition prior to her date last insured. (Tr.

78.) Dr. Brill also opined that Plaintiff could perform light work. (Tr. 80-85.) Dr. Clark, Ph.D., a

State Agency psychological consultant, concluded that Plaintiff can understand, remember, and

carry out detailed, but not complex tasks; she could relate on a superficial and ongoing basis with

co-workers and supervisors; can attend to tasks for a sufficient period to complete tasks; and,

manage the stresses involved with detailed work-related tasks. (Tr. 84.) These assessments were

affirmed by other consultants, Dr. Ruiz, M.D. and Dr. Larsen, Ph.D. (Tr. 108-11, 121.)

     At the hearing before the ALJ, Plaintiff testified that she has fibromyalgia, chronic fatigue,

and mental health issues. (Tr. 37.) She cannot stand very long before she must sit down. (Tr. 38.)

She is irritable, anxious, and cries a lot but does not know why. (*Id*.) She cannot focus and suffers

from claustrophobia. (Tr. 38-39.) When she performs chores like sweeping or dishes, she must

stop and take breaks. (Tr. 39.) The bottom of her feet almost always hurt. (Tr. 40-41.) She has

problems with her memory and anxiety makes it difficult to focus. (Tr. 42.) She has daily crying

spells that can last anywhere between 10-15 minutes to a few hours. (Tr. 44.) During the day, she

must lie down, sometimes up to six times a day. (Tr. 46.) She falls asleep during the day and

sleeps anywhere from half an hour to two to three hours. (Tr. 46.) She just wishes she could make it all go away. (*Id*.)

The Vocational Expert (VE) testified in response to a hypothetical question consistent with the ultimate residual functional capacity (RFC). (Tr. 60-61.) She testified that the hypothetical individual could perform work as a Cleaner, Dictionary of Occupational Titles ("DOT") No. 323.687-014, 1991 WL 672783; Price marker, DOT No. 209.587-034, 1991 WL 671802; and, Garment sorter, DOT No. 222.687-014, 1991 WL 672131. (Tr. 62.) The VE testified that if the individual were off task more than 25 percent, absent three or four days a month, or required two or three unscheduled breaks, the individual would be unemployable. (Tr. 64.)

In support of remand, Plaintiff first argues that the State Agency consultants issued opinions without considering Plaintiff's medical records from her primary care physician, Dr. Lane. (Tr. 107-12.) Plaintiff notes that these records document Plaintiff's fibromyalgia and several objective abnormalities. Plaintiff contends that the State Agency consultants lacked a longitudinal view of Plaintiff's medical history and thus their opinions were objectively incomplete. The ALJ found that the State Agency medical consultants' opinions were only "partially persuasive." (Tr. 20.) The ALJ noted that while Plaintiff suffered from fibromyalgia, chronic fatigue syndrome, migraines, and obesity, the "longitudinal examination" supported additional environmental limitations that the State Agency consultants omitted. (*Id*.) Nevertheless, as Plaintiff notes, the bulk of the ALJ's RFC was adopted verbatim from the State Agency consultants' opinions.  A review of the State Agency consultants' opinions demonstrates that they did not have access to any of Plaintiff's medical records documenting the severity of,

and treatment for, her fibromyalgia. (Tr. 107-12.) It is undisputed that the medical consultants'

opinions were based solely on the one-time consultative examination (Tr. 109), which cannot

document sustained functioning.

Plaintiff argues that the ALJ erroneously undertook the review of raw medical evidence

spanning from 2008 to 2020. (Tr. 10-24); *see Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)

(ALJs "must not succumb to the temptation to play doctor and make their own medical

findings"). Plaintiff further argues that the ALJ rejected all of the medical opinions (*i.e.* from Dr.

Lane and Dr. Boen) that contradicted her RFC assessment and did not provide valid reasons for

rejecting opinions supporting greater restrictions. *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir.

2014) ("ALJs are required to rely on expert opinions instead of determining the significance of

particular medical findings themselves.").

Plaintiff points out that the ALJ primarily relied on select "normal" findings in Dr. Lane's

treating record without adequately addressing other abnormal findings supporting Dr. Lane's

opinion. *See, e.g., Kaminski v. Berryhill*, 894 F.3d 870, 874-75 (7th Cir. 2018) (ALJ may not

cherry-pick record evidence that supports a finding of non-disability while ignoring evidence that

supports a medical source's conclusions to the contrary). Dr. Lane's records established a

longitudinal history of Plaintiff's depression, anxiety, panic attacks, fibromyalgia, fatigue,

malaise, insomnia, and bladder spasms and incontinence. (Tr. 344, 358, 396, 399, 496, 498, 509,

542-43, 548, 583, 591.) These conditions were supported by Dr. Lane's examinations findings of

edema, tenderness to palpitation, 14 trigger points, diffused, generalized, widespread muscle and

joint pain, and bilateral upper extremity weakness noted with grip strength, to name a few. (Tr.

379, 389, 396, 422, 437, 542-543, 544, 594, 583.)

This is information that the State Agency consultants did not have the benefit of reviewing when they rendered their opinion for light work, which the ALJ essentially adopted. Yet, this was the information to which Dr. Lane was aware of when she rendered her opinion that Plaintiff was incapable of full-time work. (Tr. 546.)

The Commissioner, in response, does not address the argument presented.  The Commissioner recites the evidence that the ALJ considered, but does not offer any argument supporting the ALJ's decision to ignore nearly all evidence that supported a finding of disability. For example, the Commissioner notes that Dr. Boen, in his 2019 opinion, opined that Plaintiff would have difficulty getting along with coworkers or a boss. (Tr. 20, 513). The Commissioner then notes that the ALJ "found this opinion unpersuasive in light of examination findings, including direct eye contract [sic], clean and neat appearance, and cooperative behavior." However, none of those factors have any bearing on whether Plaintiff can get along with a boss or coworkers in a work environment, eight hours a day, five days a week.

The Commissioner also takes great pains to remind the Court that the "substantial evidence" standard is a "low bar" and requests that the Court defer to the ALJ's findings. However, the question here is not whether there was substantial evidence to support the ALJ's findings, but whether the ALJ did her job and actually weighed the evidence before her.  If the ALJ had considered Dr. Boen's and Dr. Lane's full opinions, and stated why the evidence did not support a finding of disability, then that finding would be entitled to deference.  Here, however, it is clear that the ALJ cherry-picked the evidence to present a skewed verison of the evidence in her decision.  This is not permissible and is grounds for remand. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

15

Next, Plaintiff argues that the RFC is not supported and lacks a logical bridge. The RFC is a determination of the most a claimant can do. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is based upon consideration of "all relevant evidence in the case record." *Id*. at *5. Merely "summarizing a medical history is not the same thing as analyzing it, in order to build a logical bridge from evidence to conclusion." *Chuk v. Colvin*, No. 14 C 2525, 2015 WL 6687557, at *7 (N.D. Ill. Oct. 30, 2015); *McClanahan v. Saul*, No. 1:19-CV-414-HAB, 2020 WL 6144786, at *3 (N.D. Ind. Oct. 20, 2020) (remanding the ALJ's Decision, noting the questionable bridge given the ALJ's finding that "Plaintiff's health is pretty good other than the thirty-three objective limitations listed in this paragraph alone"). Likewise, an ALJ may not selectively consider medical reports, but must consider "all relevant evidence." *See Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000); 20 C.F.R. § 404.1545(a)(1) (we will assess your residual functional capacity based on all the relevant evidence in your case record); SSR 96-8p, 1996 WL 374184, at *5 (the RFC must be based on all of the relevant evidence).

Here, Plaintiff argues that the mental RFC fails because the ALJ erred in rejecting consultative examiner Dr. Boen's 2019 opinion. When evaluating the persuasiveness of a medical opinion, the ALJ must consider, most importantly, the supportability and consistency of the opinion. 20 C.F.R. § 404.1520c(a), (c)(1)-(5). An ALJ may not cherry-pick record evidence that supports a finding of non-disability while ignoring evidence that supports a medical source's conclusions to the contrary. *Kaminski*, 894 F.3d at 874-75; *Gerstner v. Berryhill*, 879 F.3d 257, 261-63 (7th Cir. 2018). Here, although Dr. Boen performed a second examination at the request of the Agency, the ALJ found that his conclusions were not persuasive because they were inconsistent with Plaintiff's "overall treatment" and "benign examination findings," noting that

16

her "remote and recent memory was intact." (Tr. 20-21.) Plaintiff argues that the ALJ's general statement that Dr. Boen's assessment was not consistent with the overall record is insufficient. *DeLong v. Berryhill*, No. 1:16-cv-01210- JMS-DKL, 2017 WL 3243896, at *5 (S.D. Ind. July 31, 2017) (remand warranted where ALJ failed to explain how medical source's opinion was vague and unsupported by the record). Plaintiff further argues that the ALJ's focus on Plaintiff's intact remote and recent memory is not supported.

Dr. Boen's exam findings show that Plaintiff was incapable of recalling two out of three objects after a five-minute delay (Tr. 512) and that she could not perform even one serial seven (Tr. 511). Dr. Boen's exam also demonstrated that Plaintiff was incapable of repeating even simple two and three number digit strings. (Tr. 511.) Given these findings, this Court agrees that Dr. Boen's opinion was supported by his own exam. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (an ALJ's decision cannot stand if she mischaracterizes the medical evidence). The ALJ's assessment is also undermined by other examination findings noting deficits in Plaintiff's memory. (Tr. 501 (memory was only fair), Tr. 346 (short-term memory was mildly below normal); *see also*, Tr. 42 (she has problems with her memory).) Thus, the ALJ's conclusion regarding Plaintiff's intact remote and recent memory was not a valid basis to reject Dr. Boen's opinion.

Further, Dr. Boen's conclusions were consistent with Plaintiff's treatment history, specifically noting the medication increase since his previous exam. (Tr. 344, 509.) Plaintiff notes that this history indicates that Plaintiff took almost the maximum dose of Zoloft, yet still experienced significant psychiatric symptoms, including thoughts of suicide, poor concentration, racing thoughts, sleep disturbances, and anger. (Tr. 390, 445, 448, 496, 548, 594, 602.) Clearly,

17

the ALJ improperly rejected Dr. Boen's 2019 opinion that Plaintiff would have difficulty remembering what to do, concentrating at work, and getting along with both co-workers and her bosses; these deficits would have rendered her disabled. (Tr. 513.)

Plaintiff also contends that the ALJ committed another critical error by finding that Plaintiff is capable of superficial interactions with coworkers and supervisors. Plaintiff claims this finding does not accommodate the evidence showing that Plaintiff left her previous work because of a conflict with her boss (Tr. 510), or that Plaintiff is moody, has anger issues and impulses to throw things (Tr. 344, 509, 594, 602). Despite new evidence, the ALJ adopted the social limitations described by the State Agency consultants, which do not encompass Plaintiff's actual limitations. Plaintiff asserts that had the ALJ properly considered Dr. Boen's 2019 opinion and examination, Plaintiff would have been found disabled. *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) ("rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled … can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step"); *see also Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) (given their employment relationship, it is unlikely that Agency examiners would "exaggerate an applicant's disability").

Here, the ALJ found Plaintiff incapable of interacting with the general public, yet capable of superficial interactions with coworkers and supervisors (Tr. 17.) The ALJ does not explain why an individual that is so socially limited as to be incapable of working with people can still be capable of interacting with supervisors and coworkers as required at work. Plaintiff also notes that the medical evidence demonstrates that Plaintiff is incapable of having her performance supervised for a full day. (Tr. 390, 399, 411, 424, 429, 443-446, 496, 498-499, 510-513, 602).

This Court agrees with Plaintiff that the ALJ did not build an accurate and logical bridge from the evidence of the record to her conclusion.

Plaintiff also argues that the ALJ failed to properly weigh treating physician Dr. Lane's opinion when crafting the RFC. (Tr. 542-46 (Plaintiff would require 25 percent time off task, would be absent four days or more a month, and is incapable of even low stress work).) As noted above, Dr. Lane is the only physician to have assessed the raw medical data into functional terms. Yet, the ALJ found Dr. Lane's opinion was unpersuasive because Plaintiff's "clinical findings showed her gait was stable, she had no edema, her pulses were normal, her strength was normal, she could perform fine and gross movements, and she could heel toe walk." (Tr. 21.) However, the ALJ relied solely on select "normal" findings, failing to appropriately account for Plaintiff's abnormal findings, which were assessed by Dr. Lane, a medical professional. Also, the ALJ did not explain how the "normal" findings she cited related to Plaintiff's disabling conditions or to Dr. Lane's opinion.

Additionally, the ALJ did not build an accurate and logical bridge connecting "normal strength" to whether Plaintiff can constantly use her hands and arms to manipulate objects despite her joint swelling and pain and documented bilateral upper extremity weakness noted in grip strength. (Tr. 357, 422, 506, 591, 584, 594.) This is critical because other consistent evidence includes Dr. Greer's findings (Plaintiff arrived with a single point cane, was slow getting on and off the table and unable to walk on heels, toes, tandem walk, or squat, and had a limited range of motion in the cervical and lumbar spine as well as both the left and right knee, hips, and ankles (Tr. 339, 341)) and Dr. Jan's examination (Plaintiff had pain with movement of her legs and arms and a limited range of motion in her shoulder and left hip (Tr. 506-08)). Moreover, diagnostic

19

testing showed that Plaintiff had only a fair tolerance for exercise capacity. (Tr. 573.) The foregoing evidence would undermine the ability to lift 20 pounds and stand and walk 6 hours, as the ALJ found. *See Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004) ("A great many people who are not grossly obese and do not have arthritic knees find it distinctly uncomfortable to stand for two hours at a time. To suppose that [claimant] could do so day after day on a factory floor borders on the fantastic, but . . . has no evidentiary basis that we can find."); *Goins*, 764 F.3d at 682.

Plaintiff also argues that the ALJ does not explain how, given that Plaintiff suffers from lack of concentration documented by both Dr. Lane and Dr. Boen, Plaintiff can perform any of these activities on a regular and continuing basis, nor has the ALJ shown that Dr. Lane's opinion, that Plaintiff would be off-task for 25 percent of the time and cannot handle even low-stress jobs due to her mental impairments, is not supported. Plaintiff asserts that not only are Dr. Lane's findings supported by Dr. Boen's findings and opinion, but they are supported by the record. As noted above, Plaintiff was generally taking four Tramadols a day. (Tr. 384, 390, 411, 414). The record documents Plaintiff's history and that she tried multiple medications for her pain and for her mental impairments, including Ativan, Buspar, Celexa, Zoloft and Effexor. (Tr. 602). Yet, even heavily medicated, Plaintiff remained positive for weakness, agitation, decreased concentration, dysphoric mood, nervous mood, and anxiety. (Tr. 604.) She presented with suicidal thoughts, anxious distress, and confused and racing thoughts. (Tr. 443, 496.) On other occasions, she presented with vegetative symptoms due to insomnia and lack of concentration. (Tr. 496, 498.) When stressed, Plaintiff presented with stroke-like symptoms, with left-sided facial drooping. (Tr. 602.)

Both Dr. Boen's opinion and the record supports Dr. Lane's opinion that Plaintiff cannot handle even a low stress job and would require time off task due to her combined pain, anxiety, and depression. *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019) ("[W]here a claimant's limitations are stress-related, . . . the hypothetical question [to the VE] should account for the level of stress a claimant can handle."); SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985) ("The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances."). Likewise, the RFC is silent as to whether Plaintiff would be absent from work, which the Seventh Circuit emphasized that ALJs must discuss. *Lothridge v. Saul*, 984 F.3d 1227, 1234-35 (7th Cir. 2021) (ALJs must consider evidence that claimants cannot meet benchmarks for being on task and present at work). Here, the VE testified that (1) being off task more than 10 percent of the workday or (2) missing more than 1 day of work a month would preclude work. (Tr. 64.) Dr. Lane opined that Plaintiff would be absent more than four days per month and would be off task mor than 25% of the day given her conditions. (Tr. 546.) Yet, the ALJ failed to determine whether Plaintiff would need to be off task or absent, or incorporate the VE's testimony into the RFC.

As the Seventh Circuit, and this Court, have repeatedly held, an ALJ may not cherry-pick record evidence that supports a finding of non-disability while ignoring evidence that supports a medical source's conclusions to the contrary. *Kaminski*, 894 F.3d at 874-875; *Gerstne*r, 879 F.3d at 261-263. Here, remand is required because the ALJ failed to support her functional capacity finding. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (remanding where ALJ failed to set forth a supported record basis for his functional capacity finding and provide a bridge from the record evidence to his conclusions).

21

Next, Plaintiff argues that the ALJ failed to engage in the analysis of Plaintiff's credibility that is required pursuant to 20 C.F.R. 404.1529 and SSR 16-3p. Plaintiff claims that the ALJ's credibility analysis appears to be based solely on certain objective medical evidence and selected conclusions about Plaintiff's activities. Plaintiff further claims that the ALJ failed to properly analyze and discuss the abnormal findings from exams, rejected other evidence corroborating Plaintiff's symptoms, and improperly relied on Plaintiff's "daily activities" without addressing the significant qualifications with which Plaintiff performs such activities. *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (remanding for failure to account for claimant's limitations in performing daily activities);*Thompson v. Berryhill*, 722 F. App'x 573, 582 (7th Cir. 2018).

In her decision, the ALJ referenced Plaintiff's ability to shop, prepare meals, drive a vehicle, perform housework, and manage money. (Tr. 21.) However, activities of daily living ("ADLs"), like those cited by the ALJ, are unlike work tasks as they are performed by a claimant when his pain and symptoms are least severe, with rest, the assistance of others, and not monitored by a supervisor. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). Here, the ALJ did not note the difficulties Plaintiff encounters when performing her daily activities. Thus, the ALJ's recitation of Plaintiff's supposed ADLs is not a meaningful analysis of her activities. *Young v. Sec'y of Health and Human Servs.*, 957 F.3d 386, 393 (7th Cir. 1992).

In her Function Report, Plaintiff stated that while she performs light housework, she takes many breaks. (Tr. 275.) She also stated that while she folds laundry, she must sit while she does so. (*Id*.) While she could "prepare meals," she only made frozen, ready to eat meals. (*Id*.) Further, the ALJ ignored that Plaintiff's mental health had deteriorated to the point that she no longer could handle her own finances. (Tr. 513.) Dr. Boen's exam confirmed Plaintiff's inability to

22

concentrate and perform basic calculations. (Tr. 346 (Plaintiff could do only one of the two math calculations; she was unable to perform serial 7s).) Given this, the ALJ's analysis based on Plaintiff's activities is not supported by substantial evidence.

Further, the ALJ improperly found that Plaintiff's testimony regarding the intensity and frequency of her symptoms was not credible given her "conservative" treatment. (Tr. 19.) Here, the evidence shows that Plaintiff nearly reached the maximum dosage of Zoloft, took Lorazepam three times a day, and had tried and failed Buspar, Celexa, Cymbalta, Effexor, Klonopin, Trazadone, and Vraylar. (Tr. 336, 344, 390, 407, 594); *see* SSR 16-3p (An ALJ should consider the dosage and effectiveness of any medication an individual takes to relieve symptoms). Despite the high dosage of antidepressants and antianxiety medication coupled with therapy, Plaintiff's prognosis was found to be guarded and she continued to experience panic attacks. (Tr. 344, 499, 509.) The ALJ opines that Plaintiff had merely "routine" treatment but does not indicate what more she should have done. However, there is no evidence that Plaintiff was receiving anything other than the appropriate level of care for her severe mental impairments.

Likewise, Plaintiff was following her physician's fibromyalgia treatment plan. There is no cure for fibromyalgia thus providers can only treat the pain. Despite the many medications, and their regular adjustments (ultimately taking Tramadol four times a day), Plaintiff continued to experience pain. Notably the ALJ did not ask Plaintiff why she did not receive more aggressive treatment and the fact remains that Plaintiff continued to follow her provider's treatment plan for fibromyalgia.

It is worth noting here that the State Agency psychologists found that Plaintiff suffered from pain and sustained concentration and persistence limitations, and found that her statements

23

about the intensity, persistence, and functionally limiting effects of her symptoms were substantiated by the objective medical evidence alone. (Tr. 80, 94, 108, 122). The ALJ does not reconcile this finding in her decision.

For all the above reasons, remand is required.

Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: January 21, 2022.

s/ William C.  Lee
William C. Lee, Judge
United States District Court